ANTON JOHNSON ET AL.

*vs.*

FREDERICK G. KREUZER

York.   Opinion, December 27, 1951.

*Crowley & Nason,*

*Hilary F. Mahaney,* for plaintiff.

*Joseph E. Harvey,*

*William H. Stone,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J.   This case is before the Law Court from Superior Court of York County on motion of defendant for a new trial.

The action is assumpsit.   The declaration sets forth in one count an oral agreement, to the effect that the defendant Frederick G. Kreuzer promised the plaintiffs Anton Johnson and his wife Helen Johnson that if they would come to live with him as farmhand and housekeeper, he would provide for them a home for life.   The first count alleges the agreement, performance on the part of the plaintiffs, and a breach by defendant.   There is an account annexed for work and labor from 1940 to 1950, 542 weeks at $20.00 per week.   The omnibus money counts are also attached to the writ.   The plea is the general issue.   The jury verdict was in the amount of $8,905.00.   No exceptions were taken.   The motion by defendant is the general motion for a new trial on the usual grounds that the verdict is against the law and evidence, and that the damages are excessive.

The evidence is in part conflicting but the principal facts seem to be these: Anton Johnson and his wife Helen Johnson lived on a farm in Portsmouth, New Hampshire.   About 1932 they became acquainted with the defendant Frederick G. Kreuzer and he was a very frequent visitor, and he apparently became an intimate friend.   About 1934 the defendant Kreuzer was divorced, and the plaintiffs then adopted Kreuzer's six months old son, and the Kreuzer child's name was changed to Anton Johnson, Jr.   This child has lived with the Johnsons continuously since that time, and was seventeen at the time of trial.

In 1938 the defendant Kreuzer bought a farm in Kennebunk, Maine and for a year Mr. Kreuzer had an elderly couple living there with him.   In 1939 Mr. Kreuzer urged Mr. and Mrs. Johnson to sell their farm in Portsmouth and to come to Kennebunk with him.   The plaintiffs say that

Mr. Kreuzer told them that they were farming on a small scale, but if they would come to his Kennebunk farm they could farm together on a larger scale; that it would be easier for them, and that he would give them a home so long as either or both of them lived. The defendant denied any such agreement; he says that the Johnsons were talking of selling their Portsmouth farm because they did not like it; that he did not and could not promise a home for their life, because he did not know that he "would be able to make a go of it," and that at the time when the plaintiffs say the agreement was made he (Kreuzer) did not own the Kennebunk farm and had only an agreement to buy.

In March 1940 the plaintiffs, Mr. and Mrs. Johnson, informed the defendant, Mr. Kreuzer, that they had sold their Portsmouth home and were getting ready to move to his Kennebunk farm. The plaintiffs say Kreuzer was pleased and told them they would have no more worries. Mrs. Johnson was then 47 years of age and Mr. Johnson was 55. The Johnsons moved to Kennebunk. Mrs. Johnson did the cooking, the housework, assisted on the farm, and in addition Mrs. Johnson took boarders. The relations between the plaintiffs and the defendant were most agreeable, and apparently one "very happy family." Mr. Kreuzer lived with the Johnsons on the farm when not engaged at his work elsewhere. Mr. Johnson cared for the farm, the cattle, the haying, and did anything required of him by the needs of the farm, and the produce went towards the common Kreuzer-Johnson table. To show the good relations between the parties a will was once made by Kreuzer, leaving his property to the Johnsons.

When the Johnsons first came to the farm there was little milk production and some of the property was subject to a mortgage to Mr. Kreuzer's uncle, and later subject to an attachment which Johnson paid. Johnson brought five cows with him when he came, and the milk checks were in-

creased. During the ten years after the Johnsons came, Mr. Kreuzer was employed a large portion of his time elsewhere. Kreuzer's earnings from the outside employment and the earnings of his smoke house business at the farm were retained by him, except such as he used for some farm repairs, equipment and improvements. A large part of the proceeds of the milk checks went toward a mortgage held by the Federal Land Bank, the maintenance of the Kreuzer-Johnson household, the food for the common table, and grain for livestock. There were never any misunderstandings or trouble between the parties for about ten years. The Johnsons, with their adopted Kreuzer son, and Mr. Kreuzer, lived happily together, and each contributed to the betterment of the farm and the welfare of all the Johnsons and Kreuzer. Mr. Kreuzer borrowed $828.08 of Mrs. Johnson to pay a judgment against him, and gave her a note secured by mortgage of his livestock, after which Kreuzer said that he considered that the cattle belonged to the Johnsons, and permitted Mr. Johnson to exchange, to sell and to purchase as his own. Exchanges and purchases of machinery were also done by Johnson. Mrs. Johnson testified that all the personal property was "turned over" to them by Mr. Kreuzer during the period from 1940 to 1950. There are, of course, many contradictions in the testimony and many claims of money items that the Johnsons "must have received" which are denied. A jury could well find that no cash profit was taken by the Johnsons over the years. There are discrepancies in testimony as to the amounts received by Kreuzer from his outside employments, how much he put into the farm, who owned certain cattle purchased and exchanged for, who purchased and owned certain machinery, and many other understandings and misunderstandings which presented factual questions.

In 1949 Mr. Kreuzer married again, and from the time of this marriage there was trouble between the parties. In July or August 1949 a sign was put up announcing that the

farm was for sale, and Mrs. Kreuzer informed the Johnsons that they must move. Mr. Kreuzer did not tell the Johnsons to vacate, but in November 1950 Mr. Kreuzer, without notice or warning, moved out of the house the hot kitchen stove then being used by Mrs. Johnson to get the next meal. The Johnsons without a stove in November were forced to move to another farm which they rented. The stove was returned to the Kreuzer farm after the compulsory eviction.

If the testimony of the plaintiffs is true, and the jury by the verdict has said that it is, there was an oral contract to the effect that if the plaintiffs would come to operate the defendant's farm, they (the plaintiffs) would have a home there so long as they lived. There was evidence that the plaintiffs came and that they did operate for a period of ten years in a manner to satisfy the defendant, until the time when his new wife arrived. The evidence was that they were to have, and for ten years they did have, a home. There was evidence of a breach of the claimed contract on the part of the defendant after ten years. The evidence is ample, if believed, for the jury to find a verdict for the plaintiffs. The jury had the right to determine the existence of the contract, if any, and its "extent and limitations." *Herbert* v. *Ford*, 33 Me. 90; *Thurston* v. *Nutter*, 125 Me. 411; *Bryant* v. *Fogg*, 125 Me. 420; *Levine* v. *Reynolds*, 143 Me. 15. The verdict, in so far as it bears out the contentions of the plaintiffs that there was a contract and a breach, is consistent with the circumstances and probabilities. *Jenness* v. *Park*, 145 Me. 402, 76 Atl. (2nd) 321.

There are no exceptions to the charge of the presiding justice. The charge is not before us. The charge must, therefore, be presumed to have been legally correct and to properly state the issue. *Barlow* v. *Lowery*, 143 Me. 214, 219. It was legally satisfactory to the parties at the time, otherwise, exceptions would have been taken to the charge

as given, or exceptions taken to the refusal to give requested instructions.

The amount of the jury verdict was $8905.00, and it is apparent that this amount is so excessive, under any view of the evidence, that the court is forced to the conclusion that the jury was affected by bias, sympathy, prejudice or some other improper influence. The jury must have been swayed by a sympathy for the defendant Kreuzer's son who was adopted as a baby, and cared for by the plaintiffs for his more than seventeen years. The jury was doubtless prejudiced by the sudden and perhaps needless removal by the defendant of the hot kitchen stove in November while being used by the plaintiff Mrs. Johnson. The jury must have been improperly affected in its judgment by statements concerning the disagreeable attitude of the new wife of defendant towards the plaintiffs. It is also probable that without any claim and without any evidence of future damages because of life expectancy, the jury assessment contains such damages because of sympathy.

It is the duty of the court, in the case of excessive or inadequate damages, to set aside the verdict if the jury disregards the evidence, or acts from passion or prejudice. *Leavitt* v. *Dow*, 105 Me. 50; *Libby* v. *Towle*, 90 Me. 262; *Conroy* v. *Reid*, 132 Me. 162, 166.

The manner in which the case was tried indicates that future damages were not to be considered by the jury. They were not claimed, and there was no evidence of life expectancy. The parties were permitted to testify without objection as to what was "fair and reasonable compensation" for the work done. The questions that should have been answered by the jury, according to the record, were (1) Was there a contract? (2) If there was a contract, and if the defendant prevented full performance, what was fair and reasonable compensation under all the circumstances for work and labor performed?

For about ten years the two plaintiffs with their adopted son had the home they contracted for. The farm cost the defendant Kreuzer $4200.00 in 1938. The plaintiffs conducted the farm with its stock and equipment more or less as their own. The jury award was more than twice its cost, and more than the plaintiffs could ever have profited had the defendant deeded the farm to them. The jury award was approximately $890.00 net for each of the ten years. Under the most favorable view of the evidence, the court feels that damages should not exceed $5,000.00.

In the light of the many benefits admittedly received by the plaintiffs from the defendant and from the defendant's farm, it is apparent that the jury, because of sympathy and prejudice, did not give proper consideration to the testimony.

> *Motion sustained, unless within 30 days from filing of mandate, the plaintiffs remit all of verdict in excess of $5,000.00.*