HERMINIE E. BERGERON
*vs.*
LUCIEN ALLARD

York.    Opinion, January 21, 1957.

*Simon Spill,* for plaintiff.

*Hilary F. Mahaney,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, DUBORD, JJ. BELIVEAU AND SULLIVAN, JJ., did not sit.

Dubord, J.    The plaintiff, a woman fifty-nine years of age, suffered personal injuries resulting from an accident while riding as a gratuitous passenger in an automobile operated by her nephew on August 17, 1954.

The cause was heard by a jury and a verdict in the amount of $1,000.00 was rendered.

The case is before this court on plaintiff's motion that the verdict be set aside because of inadequacy of damages.

Defendant filed no motion for new trial, and during the course of oral argument, counsel for defendant conceded liability.

The sole issue, therefore, before us is the question of damages. While, by the general common law rule, new trials were not granted upon the ground of inadequate damages in actions of trespass and perhaps in all actions of tort, it is now recognized that the rule has been relaxed, and it is now generally held that no reason can be given for setting aside verdicts because of excessive damages, which does not apply to setting them aside for inadequacy of damages.

This principle has been adopted by this court as evidenced by several decisions. *Leavitt* v. *Dow,* 105 Me. 50; *Conroy* v. *Reid,* 132 Me. 162; *Chapman* v. *Portland Country Club,* 137 Me. 10; *Johnson, et al.* v. *Kreuzer,* 147 Me. 206.

In *Leavitt* v. *Dow, supra,* our court cited with approval the following statements:

> "It is the duty of the court in case of both excessive and inadequate damages to set aside the verdicts if the jury in rendering them either disregarded the testimony or acted from passion or prejudice."
> "When the smallness of a verdict shows that the jury may have made a compromise, a new trial will be granted."

In *Conroy* v. *Reid, supra,* the court said:

"This Court has long held that, when the smallness of a verdict shows that the jury may have made a compromise, a new trial will be granted."

This principle was reiterated in *Chapman* v. *Portland Country Club, supra,* and as well as in *Johnson, et al.* v. *Kreuzer, supra.*

In this case no contention is made that the jury acted from bias, passion or prejudice. However, it is contended by the plaintiff that the jury either disregarded the testimony or reached its verdict by compromise.

Prior to the accident upon which this action is based, plaintiff, an unmarried woman, earned her living as a hotel chambermaid. Her testimony is that her earnings were $25.00 per week, together with her room. She testified that immediately after the accident, although badly shaken up, she did not think her injuries were serious, so she did not seek medical attention for about a week. At that time she consulted a chiropractor and received from him treatments during a period of a few days. She then consulted a medical doctor, and on his advice went to a hospital where x-rays were taken. She was then attended by an orthopedic surgeon, and was finally discharged by him in March of 1955, approximately seven months after the accident. She was also examined at various times by another physician. As a result of her injuries she was out of employment from the time of the accident until September 22, 1954, a period of approximately five weeks. Her special damages for medical and hospital services, not including lost earnings, amounted to $369.00.

The evidence discloses that as a result of the accident, she suffered contusions and abrasions on various parts of her body, and as the most serious part of her injuries, a compressed fracture of the seventh dorsal vertebra. The medical testimony before the jury was that this fracture, besides being painful, affected the posture of the plaintiff, increased

to some extent the curvature of her spine, and affected the tissues in the vicinity of the fracture.

The x-ray pictures disclosed an arthritic condition in plaintiff's spine, and while there is no direct evidence to establish that the injuries either brought about or aggravated this arthritic condition, the medical testimony is to the effect that previously existing conditions of arthritis may well be aggravated by injuries such as were suffered by the plaintiff.

The plaintiff testified that she suffered great pain and discomfort. She testified that shortly after she returned to work on September 22, 1954, she found it impossible, because of her injuries, to continue the type of work she had previously performed. She secured other employment somewhat of like nature where the work was not so difficult. Her weekly wages were the same, but no room was furnished to her, so that the value of her room rent became an element of damage. She continued to work in this new position until sometime in June of 1955, at which time she said she "loafed" until July "because her back hurt her." It then appears that she resumed her work and continued her employment until the first week in September, at which time she went to live with her son, where she remained until early in December. At this time she left for Florida where she secured employment as a chambermaid in a hotel, beginning her employment on December 11, 1955, and continuing it until April 9, 1956.

Both medical men testified that they advised her to continue to work as part of her treatment, and one of the doctors testified he had suggested a warmer climate. It was recommended that she wear a back brace for a period of at least six months. A careful reading of her testimony seems to indicate that it was her contention that the reason why she did not work during a short period in the summer of 1955, and from early in September of the same year to

December, a period of about three months, was because of disability due to the accident. She also testified that her back continued to pain her during and after her Florida employment, and that because of this pain, she intended to "loaf" again.

It would appear that her difficulty with the English language may account to some extent for her inability to properly and clearly explain her contentions.

That she lost five weeks from her employment immediately after the accident is conceded. This item amounts to $125.00 to be added to the other special damages making a total of $484.00. Upon the question of special damages there remained to be considered by the jury, plaintiff's contentions that as a result of her injuries, her earnings were reduced for a number of months, by an amount representing the equivalent of the value of her room, which amount was lost when she gave up her first employment. There was also her contention of inability to work for a period of three to four months during 1955, as a result of her injuries. Remaining elements of damage for the consideration of the jury were pain and suffering, past, present and future, permanent impairment and future loss of earnings.

Both medical witnesses testified that plaintiff was left with a ten percent disability as a result of the accident. No claim is made that plaintiff is a malingerer.

A careful study of all the evidence convinces us that the damages awarded the plaintiff are inadequate.

It is our opinion that in finding a verdict of $1,000.00, the jury either disregarded vital and important evidence or reached its verdict as a result of compromise. There is every indication that this is not a well reasoned and considered judgment.

*Motion sustained.*
*Verdict set aside.*
*New trial ordered.*