THOMAS DOMENICO AND PASQUALINA DOMENICO
*vs.*
WALTER J. KAHERL

Cumberland.    Opinion, June 8, 1964.

*Robert A. Wilson,*
*Henry Steinfeld,* for Plaintiff.

*Woodman, Thompson, Chapman & Hewes,*
by *Richard D. Hewes,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, SULLIVAN, SIDDALL, MARDEN, JJ. TAPLEY, J., did not sit.

SIDDALL, J. The plaintiff, hereafter termed the Appellant, while operating an automobile, was involved in an accident in the intersection of Munjoy and Wilson Streets in the city of Portland. She brought a complaint against the defendant, hereafter called the Appellee. The jury returned a verdict for the Appellant and assessed damages in the sum of $350.00. The Appellant filed a motion with the presiding justice to set aside the verdict on the grounds that the damages awarded were inadequate and to order a new trial on damages alone. Upon denial of this motion the Appellant, on the same ground, appealed from the judgment.

The Appellee makes objection to the appeal because it was an appeal from the judgment rather than an appeal from the ruling of the presiding justice. Upon the facts in this case an appeal from the judgment is proper and preferable under our practice. Field and McKusick M.R.C.P. Sec. 59.4.

As a general rule the assessment of damages is for the jury unless the jury have disregarded the testimony or acted under some bias, prejudice, or improper influence with the result that the damages awarded are either excessive or inadequate. *Conroy* v. *Reid,* 132 Me. 162, 166.

Where the smallness of a verdict shows that a jury may have made a compromise, a new trial will be granted. *Leavitt* v. *Dow,* 105 Me. 53.

At the time of the accident on December 15, 1962, the Appellant was earning $40.00 per week as wages. She was at that time eight months pregnant. In the event of recovery she was entitled to be compensated for her pain and suffering and loss of wages which were found to be the proximate consequences of the negligence of the defendant (Appellee).

There was considerable testimony of the Appellant and her husband bearing on the extent of her pain and suffering. Aside from this testimony the record shows that the Appellant was scheduled for a Caesarean section on or about January 7, 1963. On the day of the accident, Dr. McCann, her physician, was called to see her at the Maine Medical Center. He found her vomiting and complaining of pain in the back and legs. She had what was described as bad bruises on her legs and right shoulder, but no bruises were found on her back. Following a physical examination to determine the condition of the baby, Dr. McCann ordered sedation for the patient. She was referred to Dr. Jack Manol, an orthopedic specialist, in relation to the condition of her back. Thereafter, Dr. McCann had numerous telephone conversations with his patient and prescribed medication for her, but did not see her again until she was admitted to the hospital on December 27, 1962. On that date a Caesarean section was performed, 16 days prior to the expected date of the operation. The Appellant had had two previous Caesarean sections, one in 1944 and one in 1958, and she had numerous fibroid tumors of her womb which had been present for years. She had had several pregnancies which had not resulted in childbirth. The period of her recuperation was three weeks longer than in previous births. Apparently the child suffered no ill-effects from the accident and on cross-examination the doctor testified that the accident had no effect on the delivery of the child or on the healing of the womb; that it would be conjectural to say that the accident hastened the birth of the child; that the patient flowed excessively after the birth, but that condition was related to the fibroid tumor rather than to the accident.

Dr. Jack Manol testified that he examined the patient on December 19, 1962. X-rays of the lumbar-sacral spine were negative. There was a sprain of the lumbar-sacral spine but no dislocation of it. On account of her pregnancy Dr. Manol was unable to prescribe the normal type of treat-

ments usually prescribed for a lumbar-sacral sprain. However, after her recovery from confinement, 20 physiotherapy treatments were given to her at the Maine Medical Center between the dates of February 15 and April 18, 1963. Dr. Manol also testified that during this period of treatment the Appellant, in his opinion, was totally disabled and could not engage in the duties of her usual work, and that in his opinion a lumbar-sacral sprain such as found by him was consistent with the results of an accident in which the person seated behind the wheel of an automobile was thrown forward and backward. We note that Dr. Manol was not subjected to cross-examination.

Dr. Stephen Monaghan, an orthopedic specialist, testified for the defendant. He examined the Appellant on August 5, 1963. At that time the Appellant's back was essentially normal. Dr. Monaghan testified that she did not have any disability at the time he examined her, and that any back strain, in his opinion, had cleared up sometime prior to the time of his examination.

Any apprehension or anxiety suffered by the Appellant before the birth of the child, concerning the safety of the child or her own safety, was an element of damage in this case. There is no indication in the record that the Appellant did not have the sensibilities and feelings which a normal woman has for the safety of her unborn child. On the contrary there was ample testimony, in addition to her own and that of her husband, indicating that she was seriously upset over the possibility of injury to her child. We quote from the testimony of Dr. McCann in describing her condition at the time he saw her on the date of the accident.

"Q And she was nervous and distraught?
A She very definitely was extremely nervous and crying about her baby, wanted to know if her baby was well and if the accident had caused her any damage, especially to the baby.

186

Q Would you say, Doctor, that her condition was evidenced to you as an expert obstetrician of fear neurosis of losing her child?

A I can't use the word "neurosis"; I would say she was terribly agitated as to the condition of the child, and with good reason."

From the cross-examination of Dr. McCann we quote the following testimony:

"Q Going back to the time you saw her on December 14th, the date of the accident, did you have an opinion then as to the extent of the period of disability that she sustained as a result of this accident?

A Yes.

Q What was that period?

A From the standpoint of the pregnancy I think an additional week of watchful [sic] would determine whether this patient's afterbirth was going to separate and whether or not the accident had done any damage to the uterus. I think a week's observation would be sufficient to tell one way or the other whether or not the accident did affect the pregnancy.

And on redirect examination:

Q Doctor, during this period of watchful waiting that you referred to, that is the period in which you were concerned whether or not there might have been injury to the child and she might lose the child?

A That is right.

Q That is not a period of disability?

A Well, that is what I tried to make quite clear. This is as pertains to the pregnancy. I felt a week's watchful waiting would determine whether or not this accident caused separation of the afterbirth or any damage to the uterus."

Thus, the medical evidence disclosed that for a period of one week after the accident, termed by Dr. McCann a period of watchful waiting, it was not known whether there had been an injury to the child which might cause the loss of the child. During that period of time the mother, as well as her doctor, was aware that she might lose her child. The evidence is clear that she was disturbed over that possibility. Her mental distress, physical damage being present, was an element of damages for which she was entitled to be compensated.

If it were not for the aspect of mental anguish we would not disturb the findings of the jury on the question of damages. However, in view of the undoubted danger of miscarriage for the period of one week after the accident, and the Appellant's justifiable apprehension in regard thereto, having in mind her history of difficulty in childbirth, damages of $350.00 are clearly inadequate. The jury must have disregarded or misapplied the rules of damages or have compromised as to the Appellee's liability. Under these circumstances we cannot send the case back for a rehearing on damages only. A new trial of the entire case must be had.

The entry will be

*Appeal sustained.*
*New trial granted.*