**Hazel THOMPSON**

v.

**Frances JOHNSON.**

Supreme Judicial Court of Maine.

Nov. 16, 1970.

Lawrence P. Mahoney, Portland, Richard E. Valentino, Saca, for plaintiff.

Richard D. Hewes, Portland, for defendant.

Before DUFRESNE, C. J., WEBBER, MARDEN, WEATHERBEE and POMEROY, JJ.

POMEROY, Justice.

The Plaintiff appeals from a judgment in her favor for damages for personal injuries received in an automobile accident on the ground that the damages were inadequate. She seeks an Additur or in the alternative a new trial on damages only.

The accident occurred in May 1965. Liability is to be determined at common law, and not under the "comparative negligence" statute of 1967. 14 M.R.S.A. § 156. Negligence of the Defendant and lack of contributory negligence of the Plaintiff are not disputed.

Without question, the Plaintiff received severe injuries. The question is what portion of her claimed damages was caused by the accident.

The jury returned a verdict of $4,000.00. Medical bills received in evidence without objection amounted to over $3,100.00.

The Defendant does not, as we understand her argument, deny that the services were performed or that the charges were reasonable. Her position is that a substantial part of the services was not proximately caused by the collision. If the services were properly chargeable to Defendant, the jury award would clearly be far below what reason would require to meet the damage. Causation then is the problem before us.

Under the familiar rule, we take the evidence in the light most favorable to the appellee, that is to say, in support of the jury verdict.

So considered, the question is whether the verdict reflects bias or prejudice, failure to apply reason or compromise on the part of the jury.

The parties are entitled to the judgment of the jury fairly reached. Otherwise the judgment may not stand.

To summarize the uncontroverted facts, the Plaintiff, aged 38 years, was a guest in an automobile which was in collision with the car driven by the Defendant on May 28, 1965. She received numerous bruises and abrasions about her body, a fracture of two ribs and was hospitalized under the care of Dr. Peterlein for four days. She continued treatment under Dr. Peterlein until August, at which time she was referred by Dr. Peterlein to Dr. Robert because of a back condition. Eight months later, in May 1966, Dr. Robert referred the Plaintiff to Dr. Brinkman of Portland, a neurosurgeon, who was primarily interested in complaints about the Plaintiff's back and left leg. He operated upon the Plaintiff and relieved a compression of a nerve in the Plaintiff's back, caused, he said, by an osteophyte, or bone growth, aggravated by the accident. In his opinion two to three months after the operation was a reasonable recovery period from this surgery.

Dr. Brinkman had no opinion as to whether the coccyx condition later described was caused by the accident. In the period between November 22, 1965, and May 11, 1966, Dr. Bakki gave chiropractic treatment to the Plaintiff on 56 visits. She made no complaints of pain in the area of the coccyx. There were complaints of pain elsewhere throughout the period. In April the Plaintiff was capable of fulltime employment in the store operated by her husband and herself, although complaints of pain, particularly in the area of the 7th rib and "the bottom of" her back were frequently voiced. Finally in September of 1967 Dr. Robert determined that cartilage damage had resulted at the time of the rib fracture and surgical intervention was necessary to relieve the pain. He accordingly ordered her hospitalized and on September 19, 1967, performed a sub-costal resection.

This surgery, he said, in his opinion was made necessary by the accident in which the ribs were fractured.

Although he had determined at that time a coccygectomy was necessary, he deferred this surgery until November 24, 1967. This too, he said, was occasioned by the accident of May 28, 1965.

No medical testimony was offered to contradict any of the medical evidence above described. We, therefore, have a case in

which the uncontradicted medical testimony is, the Plaintiff suffered,

(a) numerous bruises, abrasions and a fracture of 2 ribs;

(b) was caused to undergo a myelogram;

(c) was caused to undergo a hemi laminectomy;

(d) was forced to undergo a sub-costal resection; and

(e) was forced to undergo a coccygectomy.

During a period of more than two years she experienced pain and suffering, during most of which time it was so intense she was unable to work.

It is long since settled in this State that, contrary to the Common Law Rule, it is within the power of the Law Court to order new trials be had upon the ground of inadequate damages. Leavitt v. Dow, 105 Me. 50, 72 A. 735 (1908).

The Court's duty to set aside verdicts in those cases in which the damages awarded are either excessive or inadequate must be exercised when it appears the jury either disregarded the testimony or acted from passion or prejudice.

"Each litigant is, of right, entitled to a verdict representing the actual judgment of the jury, uninfluenced by bias, accident or mistake."

Chapman v. Portland Country Club, 137 Me. 10 at 12, 14 A.2d 500. See also Johnson v. Kreuzer, 147 Me. 206, 85 A.2d 179; Conroy v. Reid, 132 Me. 162, 168 A. 215; Bergeron v. Allard, 152 Me. 297, 301, 128 A.2d 848.

In this case the only medical opinion offered as to the causative relationship between the accident for which the Defendant is obviously responsible and the medical treatment undergone by the Plaintiff clearly does not support the conclusion as to damages which the jury reached.

This Court has said:

"Even if the testimony of the witness is not directly contradicted, it does not make it conclusive and binding upon the trier of the facts."

Houle v. Tondreau Bros. Co., 148 Me. 189, 91 A.2d 481.

■ The rule is applicable to expert witnesses' testimony. Sanborn v. Elmore Milling Company, Inc., 152 Me. 355, 129 A.2d 556; Bilodeau Realty, Inc. v. Lewiston Urban Renewal Authority, Me., 237 A.2d 398; Pease v. Shapiro, 144 Me. 195, 67 A.2d 17.

The above Rule is not without qualifications, however.

" * * * uncontradicted testimony is not to be utterly disregarded and arbitrarily ignored without reason."

Pease v. Shapiro, 144 Me. 195, 67 A.2d 17 at 20.

Looking to the evidence, we find nothing unbelievable in the testimony of the medical witnesses. Each, it was stipulated, was a man of outstanding qualifications in the field of medicine in which he specialized. The fact of the rib fractures was demonstrable on x-rays which the jurors had before them. That the abnormal pathological condition of the cartilage, as found by Dr. Robert, was occasioned by the rib fractures which occurred in the accident, was certainly a reasonable conclusion. The only area in which there was any uncertainty as to the causal relationship expressed by any physician was with regard to the coccyx and the necessity of its removal.

It is noted that the only uncertainty expressed even in this regard was expressed by the neurosurgeon who was not charged with responsibility for treating this particular condition.

The only conclusion we can reach is that the jurors, laymen all, substituted their

judgment for that of the medical witnesses, or in the alternative accepted the medical experts' judgment but misinterpreted the rule of damages and, thus, awarded grossly inadequate damages.

This is not to say the uncontradicted opinions of expert witnesses must always be accepted by the factfinders. We intend to say only that expert opinion cannot arbitrarily be ignored and the inexpert opinions of the jurors be substituted in place thereof in any matter which is within the realm of the expertise.

A careful study of all the evidence convinces us that the damages awarded the Plaintiff are inadequate. There is every indication that this jury verdict was not a well reasoned and considered judgment.

The entry must be,

Appeal sustained.

Verdict set aside.

New trial ordered as to damages only.

WILLIAMSON, C. J., sat at argument but retired before decision.