Clyde B. ARNOLD et al.

v.

MAINE STATE HIGHWAY
COMMISSION.

Supreme Judicial Court of Maine.

Nov. 11, 1971.

Donald H. Marden, Waterville, for plaintiffs.

Ronald M. Roy, Winslow, Atwood C. Nelson, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE and ARCHIBALD, JJ.

ARCHIBALD, Justice.

On appeal by the defendant. The plaintiffs (Arnolds) own real estate in Waterville at the interchange of two major highways, Kennedy Memorial Drive and Interstate 95. The State of Maine took by eminent domain the access rights of the plaintiffs to Kennedy Memorial Drive, thereby depriving them of all their frontage on the Drive, this being the last ninety feet (90') on the northerly side of the Drive prior to its intersection with Interstate 95.

Following proper procedures in such cases, the matter reached the Superior Court and was tried before a jury on the sole issue of damage, resulting in an award of Ten Thousand Dollars ($10,000.00). On motion by the plaintiffs asserting inadequacy of damage, and over the defendant's objection, the verdict was set aside and a new trial ordered. The parties thereafter stipulated that a single justice of the Superior Court could render a decision on the issue of damage based only on the record of the prior proceeding. The second trial resulted in an award of Eighteen Thousand Dollars ($18,000.00) from which the defendant appealed. The appeal preserves defendant's objections to the order mandating a new trial as well as the result of the second trial.

The Arnolds' land is a corner lot bounded westerly by the northbound ramp leading to Interstate 95, southerly by Kennedy Memorial Drive, and easterly by a minor city street fifty feet (50') in width, thus being accessible from two public ways.

Sun Oil Company on October 10, 1963, prior to the condemnation, had executed a contract with the Arnolds for the purchase of this land, the consideration therefor being Thirty Thousand Dollars ($30,000.00), subject to cancellation if certain access rights to Kennedy Memorial Drive could not be obtained. Prior to the taking, but before the sale was consummated, Sun Oil Company had arrived at a satisfactory understanding on means of access to the land from the appropriate officials.[1] Thus postured, the contracting parties were ready to complete the transfer of title when the State Highway Commission, on May 13, 1964, determined that public exigency required the condemnation of all access rights from Kennedy Memorial Drive. This effectively relieved Sun Oil Company from any further obligation to the Arnolds under the contract which, but for the action of the State, was then enforceable by either party.

The Arnolds' real estate appraiser testified that damage resulting from the condemnation was Eighteen Thousand Dollars

[1]. 23 M.R.S.A. § 704: "It shall be unlawful to construct or maintain any driveway, entrance or approach within the right-of-way of any state or state aid highway which lies outside of the compact or built up section, so called, without a written permit from the commission, or if within the compact or built up section, so called, without a written permit from the proper town officials, and such right-of-way shall be deemed the full width of the right-of-way as laid out by the State, county or the town.

The commission and towns are authorized and directed to make such rules and regulations as to design, location and construction of driveways, entrances and approaches on said highways as will adequately protect and promote the safety of the traveling public, *but the commission and the towns shall in no case deny reasonable ingress and egress to property abutting the highway except on limited access highways.* * * *" (Emphasis supplied.)

($18,000.00). His counterpart for the appellant stated his opinion of damage to be Fifty-eight Hundred Fifty Dollars ($5,850.00). Both experts agreed that the highest and best use of the Arnold property was for commercial use as a gasoline service station, and both used the market value approach. The differential in their opinion of value is demonstrated by the following summary:

|  | Owners' Expert | State's Expert |
|---|---|---|
| Value before: | $30,000.00 | $17,300.00 |
| Value after: | 12,000.00 | 11,450.00 |
| Damage: | $18,000.00 | $ 5,850.00 |

The appraiser for the State considered three sales of service station properties in the area and stated: "I felt that the sales, the land sales that took place in the immediate neighborhood of the property were more indicative of value than the sales contract." On the other hand, the expert for the owners, while considering other property, said: "The number one in my consideration was the actual sales agreement with Sun Oil * * *."

Mrs. Arnold testified that the differential in value before and after the taking was Twenty-four Thousand Dollars ($24,000.00) and her husband put this figure at Twenty-three Thousand Dollars ($23,000.00) or Twenty-three Thousand, Five Hundred Dollars ($23,500.00), both using Thirty Thousand Dollars ($30,000.00) as the so-called "before" value.

The negotiations between Sun Oil Company and the Arnolds resulting in the execution of the contract, which was admitted in evidence, were described by the Arnolds and the representative of the Oil Company. The Company considered the property of prime value because of its superior visibility from Interstate 95 compared to any other site, reasoning: "Because of the fact that motorists on the Interstate highway are travelling at seventy miles an hour and the better sign visibility that you can get, the more business you get." Although the frontage was ninety feet (90'), Sun Oil Company also considered it would have an extra fifty feet (50') available for ingress and egress via the adjacent street.

The court has held on numerous occasions that new trials will be granted when the damages awarded are clearly inadequate.

"It is the duty of the court, in the case of excessive or inadequate damages, to set aside the verdict if the jury disregards the evidence * * *" Johnson et al. v. Kreuzer, (1951) 147 Me. 206, 211, 85 A.2d 179, 182; or "[W]hen the smallness of a verdict shows that the jury may have made a compromise * * *" Conroy v. Reid, (1933) 132 Me. 162, 166, 168 A. 215, 216; Bergeron v. Allard, (1957) 152 Me. 297, 128 A.2d 848; Domenico v. Kaherl, (1964) 160 Me. 182, 200 A.2d 844.

■ The contract of sale was properly before the jury, and was relevant evidence bearing on the value of the plaintiffs' land. The record clearly indicates that it was a voluntary transaction made in good faith and neither remote in point of time nor simulated. Brush Hill Development, Inc. v. Commonwealth, (Mass.1959) 155 N.E.2d 170; Robards v. State, (Tex.Civ.App.1956) 285 S.W.2d 247; State v. Clevenger, (Tex. Civ.App.1964) 384 S.W.2d 207; Durika v. School District of Derry Township, (1964) 415 Pa. 480, 203 A.2d 474; United States v. Certain Parcels of Land, etc., (3d Cir. 1944) 144 F.2d 626.

The constitution mandates that "Private property shall not be taken for public uses without just compensation" (Maine Constitution, Art. 1 § 21), and this requires that an owner "shall be put in as good a condition, pecuniarily, by a just compensation, as he would have been in if [his] land had remained entire, as his own property." Bangor & P. R. Co. v. McComb, (1872) 60 Me. 290, 297.

We must consider the appropriate weight to be given the contract of sale in terms of

the jury award to determine whether the ruling granting a new trial was proper.

In Brush Hill Development, Inc. v. Commonwealth, supra 155 N.E.2d at 174, it was stated: "Such testimony about executory contracts of sale, absolute in terms, relating to the very land taken, is *much more directly relevant* than if it concerned neighboring or comparable land." (Emphasis supplied.)

> "It would seem to logically follow that, in the absence of a completed sale, evidence of the price agreed upon in a binding contract of sale for property between the owner and a purchaser, both acting in good faith, would be of *substantial significance* in arriving at the fair market value of such property." (Emphasis supplied.) East Orange v. Crawford, (1963) 78 N.J.Super. 239, 188 A.2d 219, 221.

■ An actual sale very near to the time at which the value is to be fixed is of "great weight" as contrasted with mere opinion evidence. Watson v. Milwaukee & M. R. Co., (1883) 57 Wis. 332, 15 N.W. 468.

> "And if market value * * * is 'what a willing buyer would pay in cash to a willing seller,' evidence of what the property sold for in a bona fide sale is *most significant.*" (Emphasis supplied.) United States v. Certain Parcels of Land, etc., supra, 144 F.2d at 629.

On the facts before us, the jury had before it the opinion of the State's witness who, admittedly, gave more weight to sales of adjacent property than he did to the $30,000.00 contract price. In contrast, the expert witness for the owners gave "number one" consideration to this figure. However, it should be noted that both experts essentially agree on the value of the property remaining *after* the condemnation, the difference between them being only $550.00. The State introduced no evidence of any change of circumstances between the date of the contract and the date of the con-

demnation. There was nothing in the record to indicate that the Arnolds were not competent contracting parties. It was perfectly clear that the owners were under no pressure to sell or that Sun Oil Company acted without a full consideration of all the circumstances and available alternative locations. The negotiating agent for the company testified:

> "Q And in this case you recommended the purchase of this site for $30,000.-00?
>
> A Not only I recommended it but about five other people have to recommend it.
>
> Q Well I was going to ask you where it went after your recommendation is made?
>
> A Well it starts with the district land man and goes to the district manager, to the regional land manager and to Philadelphia and they all have to be in agreement that this is suitable as a site for a service station.
>
> Q And these are all steps up the ladder?
>
> A That's right, of which I am the lowest.
>
> Q So that after it went through the company steps it was finally signed by a vice-president of the Sun Oil Company?
>
> A This is correct.
>
> Q So that taking into consideration all of the things Mr. Roy asked you about the narrow frontage and the other things, your company still agreed to pay $30,000.00 for this piece of land?
>
> A This is correct."

■ Although no Maine cases have been called to our attention on the point, the general rule requires the owner to maintain the burden of proving by a preponderance of the evidence his right to damage

and the amount thereof, while the burden is on the condemnor to show matters which tend to reduce or mitigate the damage. Twenty Club v. State, (1958) 167 Neb. 37, 91 N.W.2d 64. More precisely, the burden is on the condemnee to prove that by reason of the taking of a portion of his property, the value of such property has been impaired. Morrissey v. Commonwealth, (1967) 424 Pa. 87, 225 A.2d 895. *See also* 29A C.J.S. Eminent Domain § 271. The Arnolds have met this burden. Their appraiser gave proper weight to the sale contract in applying the market value approach. In an effort to reduce the damage the appraiser for the State gave only secondary consideration to the contract and his testimony is of less probative value because of that fact.

We do not mean to indicate that the price which a buyer and a seller may agree upon is conclusive evidence of fair market value. There may be many factors indicating that such a contract price is not representative of fair market value. We suggest, for example, a material change in the economy of the area involved or the pressures that the owner may be under compelling him to sell. There may be sentimentality involved. Remoteness between the time of the contract and the condemnation may be a factor. None of these, or matters similar thereto, were considered by the State's appraiser to justify reducing the fair market value below the contract price.

The record before us indicates that the contract of sale was consummated deliberately and after extensive negotiation. The Arnolds were not compelled to execute the contract, nor was Sun Oil Company restricted to this particular lot in obtaining a business location. There was nothing in the record that indicated any change of circumstances in the neighborhood between the date of the contract and the date of the condemnation. This contract seems typical of one arrived at in the open market where willing buyers and sellers meet on equal terms.

An actual sale, or an enforceable contract of sale, of the exact property later taken under the power of eminent domain between competent contracting parties acting under no duress or compunction, where no intervening conditions or circumstances are shown that could materially influence the price agreed upon, is strong and significant evidence of fair market value at the time of the condemnation and should be accorded great weight.

It is clear to us that the jury award of Ten Thousand Dollars ($10,000.00) was either the result of compromise or rendered without proper regard to the weight of the evidence offered by the appellees. The reduction of.Eight Thousand Dollars ($8,000.-00) from the owners' lowest estimate of damage cannot be justified on this record, particularly since both experts essentially agree upon the value of the land remaining. The verdict was clearly beyond the range of the preponderance of the evidence, and the order granting a new trial was within the discretionary power of the Justice below.

The State has also appealed from the damage award of Eighteen Thousand Dollars ($18,000.00) resulting from the second trial. It was stipulated that the single Justice would determine the damage "upon all the evidence found to be admissible by the court as contained in the transcript, exhibits and records of the first trial of said cause." The Justice made this order:

"[T]he Court having reviewed the record and exhibits of the first trial, it is hereby ordered that judgment be entered for the plaintiff in the amount of $18,-000.00 plus interest * * *."

There is nothing in the record to indicate the factual basis of the result reached by the single Justice, nor do we know what legal principles he considered in reaching his result. The State did not avail itself of M.R.Civ.P., Rule 52(a), under which the court is required, on motion, to make special findings of fact and to state

its conclusions of law thereon. Therefore, we assume that the single Justice took into consideration only the legally admissible evidence in the record. The result he reached reflects a proper application of the law to the facts of this case.

The entry is

Both appeals by the State are denied.

All Justices concurring.

POMEROY and WERNICK, JJ., did not sit.