GERALDINE PEASE

*vs.*

DAVID SHAPIRO

———

EDWARD PEASE

*vs.*

DAVID SHAPIRO

Androscoggin.   Opinion, June 23, 1949.

*John G. Marshall and John A. Platz*, for plaintiff.

*Harris M. Isaacson, James R. Desmond and*
*William B. Mahoney*, for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, FELLOWS,

FELLOWS, J. The first of these two cases is brought by Geraldine Pease against David Shapiro, for alleged negligence on the part of the defendant in "creating a condition" or by suffering "a condition to exist" whereby snow and ice fell from the defendant's building, and injured the plaintiff Geraldine Pease, then upon the sidewalk. The second case is brought by the husband of Geraldine Pease for medical expenses incurred by him resulting from the alleged injuries, and also for loss of his wife's services and companionship. No claim is made, and no evidence appears to show that the defendant had any personal knowledge of the accident or of snow conditions before. The plea was the general issue in both cases. The actions were tried together before a jury in the Androscoggin Superior Court. The amount of the verdict for Geraldine Pease was found by the jury to be $2,000 and for Edward Pease $500.

The cases are before the Law Court on exceptions by defendant to the order of the presiding justice for the jury to return a verdict for the plaintiff in each case; on excep-

tions by defendant to refusal of presiding justice to direct a verdict for defendant; on exceptions by defendant because, on defendant's motion for new trial to the presiding justice, the justice did not consider the merits of the motion, but ruled "in order that the cases might go promptly to the Law Court." The defendant also filed general motions for new trials.

The record shows that on February 16, 1947 the defendant was admittedly the owner of a three story building at No. 331 Main Street in Auburn. The evidence as to existing conditions and alleged negligence came from three witnesses only, George Barron, a civil engineer who made a plan and measurements, and the testimony of Geraldine Pease, and her mother Laura C. Comeau.

It appears that on February 16, 1947 the plaintiff Geraldine Pease and her mother were walking at noontime on the sidewalk in front of defendant's building. The plaintiff lived next door. The plaintiff testified that "I was talking with my mother and all of a sudden I felt something hit me, and at the same time I saw a red light, a ball of fire, and I collapsed there," and further, the plaintiff said "There was an awful lot of ice on the ground * * * on the sidewalk * * * I didn't know what had struck me * * * there were some big pieces of ice on the sidewalk some two feet long and eighteen inches thick * * * and some small ones." The mother, Laura C. Comeau, who was with the plaintiff and who testified through an interpreter, said "I saw the first piece fall. Then I saw the second piece fall * * * from the roof of the building, * * * near the piazza." "The first one I didn't see, but the second ice it fall from the roof of the building and I stepped away. The piece fall and broke and pieces fall on her, right against her." Mr. Barron said that the eaves of the building were five feet ten inches from the line of the inside edge of the sidewalk. There was a gutter but no guard rail or snow fence. The roof pitched toward the sidewalk. There was no evidence of any defect

in the roof. There was no lack of repair. There was no evidence of any previous gathering of snow or ice, and no evidence of snow or ice falling before. There was no evidence as to how long snow or ice had been on the roof, and except for the snow and ice on the sidewalk there was no evidence as to how much had accumulated or where. There was no evidence of any city ordinance regarding roofs or protection from snow. The defendant introduced no testimony.

The plaintiff's action is for negligence and the defendant can be held liable only on the ground that he was negligent, and that there was no negligence on the part of the plaintiff that contributed to the injury. The person in control of a building is bound, as between himself and the public, to keep buildings and other structures abutting upon streets and sidewalks safe for travellers lawfully passing along the same. *Lee* v. *McLaughlin,* 86 Me. 410; 30 A. 65; 26 L. R. A. 197. The owner, who has general supervision or control of a building, is liable when damage to the lawful pedestrian or traveller from snow or ice results *wholly* from the shape and condition of the roof and the proximity of the building to the street or sidewalk. *Meyers* v. *Manufacturing Co.,* 122 Me. 265; 119 A. 625.

As to the direct evidence of negligence, in this case under consideration, the plaintiff testified that something hit her while she was on the sidewalk in front of defendant's building. She did not know what. Her mother who was with the plaintiff said that she saw the second piece of ice fall from the roof and that her daughter was struck. The presiding justice in directing that the jury must find for the plaintiffs in both cases, left to the jury, as triers of facts, the question of the amount of damages only. The testimony of the mother, in effect, was by the court taken as true, and any inferences that might be drawn from facts and circumstances as testified to by other witnesses were, by the presiding justice, resolved in favor of the plaintiffs. The de-

fendant did not admit liability and expressly denied it. No testimony was offered in defense.

It is the well settled law of procedure that at a jury trial the presiding justice is authorized to direct a verdict for either party when a contrary verdict could not be sustained by the evidence. When, on the other hand, a case is doubtful, or different conclusions might be drawn from the evidence by different minds, the facts should be submitted to the jury. *Young* v. *Chandler*, 102 Me. 251; 66 A. 539; *Heath* v. *Jaquith*, 68 Me. 433. The rule is clear, but often the application of the rule presents difficulties.

The presiding justice in directing a verdict for the plaintiff where the evidence is oral, must necessarily accept the plaintiff's contention as true or draw inferences favorable to the plaintiff from facts and circumstances. In some cases, all persons might not be able to accept at face value the testimony of a witness, even if that testimony is not contradicted. There is no law that can compel a human mind to believe, or to disbelieve, uncontradicted oral testimony. It may be inherently improbable. It may be impossible. It may be exaggerated. The silent facts and circumstances may raise doubts. It may not "ring true." The appearance, manner, or interest of a witness makes a vast difference to the mind of him who hears testimony and who must decide as to truth or value. A witness who may appear worthy of credence to one person may not so appear to another.

In this case an interested witness testified through an interpreter that she saw ice fall from the roof, and that this ice or snow from the roof struck her daughter. This was the only witness who positively testified as to where the ice came from. Inferences only may be drawn from the story of the plaintiff. Was the mother's appearance, manner of testifying and the circumstances such that all minds would necessarily accept the story at full value? Was any fact or inference gained or lost through the interpretation from a

foreign language? Was the defendant's building so situated and so constructed that if there was snow or ice on its roof that it could or would fall in the manner as described? As to the plaintiff's testimony, did any ice and snow that she says she saw on the sidewalk fall from the roof of the defendant's building to her injury, and was she free from negligence that contributed to her injury? Was it probable that the plaintiff was struck by one of the pieces of ice that may have been, as she says, "two feet long and eighteen inches thick?" How large were the pieces that struck the plaintiff, if any from the roof struck her? Were all the alleged injuries due to ice or snow falling from the defendant's roof? Did she, by any chance, carelessly stumble and fall over ice on the walk? The plaintiff lived next door, and from what she stated the weather conditions to have been for some time previous, should she have known of a dangerous condition, if one existed, and taken any precautions? If so, did she take any precautions? In brief, did the claimed injuries of the plaintiff result "wholly from the shape and condition of the roof and the proximity of the building to the sidewalk?" *Meyers* v. *Manufacturing Co.,* 122 Me. 265; 119 A. 625.

It would appear in this case that different minds might draw different conclusions from the evidence, and the fact that the testimony is not directly contradicted does not necessarily make it conclusive and binding, although uncontradicted testimony is not to be utterly disregarded and arbitrarily ignored without reason. "It should be carefully considered and weighed with all other evidence in the case, and with all of the inferences to be properly drawn from facts established * * * the court is not required to put the stamp of verity upon it, merely because it is not directly contradicted by other testimony." *Mitchell* v. *Mitchell,* 136 Me. 406; 11 A (2nd) 898, 904.

We are of the opinion that the right of the jury to pass upon the evidence of liability in these negligence cases

should not have been taken away. The cases present doubts and different conclusions might be drawn by different minds.

As previously stated, these cases are before the Law Court on exceptions by the defendant. There was also a general motion for a new trial filed in each case by the defendant. We find it necessary to decide only the question of defendant's exceptions to the direction of verdicts for the plaintiffs. We do not pass upon the general motions.

The general motions for new trials filed by the defendant do not reach this order directing verdicts for the plaintiffs. The defendant's exceptions only apply. Complaints as to the rulings, opinions, or directions of a justice presiding, must be by exceptions. *Rhoda* v. *Drake,* 125 Me. 509; 131 A. 573; *Stephenson* v. *Thayer,* 63 Me. 143; *First Parish* v. *McKean,* 4 Me. 508. On exceptions for *failure* to direct, a general motion after jury verdict is often considered because of waiver. *Symonds* v. *Free Street Corp.,* 135 Me. 501; 200 A. 801; 117 A. L. R. 986. The civil rule apparently differs somewhat from the rule in criminal cases. See *State* v. *Bobb,* 138 Me. 242; 25 A. (2nd) 229. The general motions, because of claim of excessive damages as assessed by the jury, would be applicable here on that question if it were necessary to consider damages. We do not find it to be necessary.

We sustain the defendant's exceptions to the order of the presiding justice directing verdicts for the plaintiffs.

> *The entry in each case to be*
> *Exceptions sustained.*