Robert R. **WANSER**, Plaintiff-Appellee,

v.

**LONG ISLAND RAILROAD COMPANY,**
Defendant-Appellant and Third-Party
Plaintiff-Appellant-Appellee,

Central Islip Cooperative G. L. F. Service, Inc., Third-Party Defendant-Appellant-Appellee.

No. 94, Docket 24171.

United States Court of Appeals
Second Circuit.

Argued Oct. 11, 1956.

Decided Nov. 16, 1956.

William A. Blank, Brooklyn, N. Y., for plaintiff-appellee.

Marvin V. Ausubel, New York City (William J. O'Brien, A. Harold Frost, and Bernard Jenkin, New York City, on the brief), for defendant-appellant and third-party plaintiff-appellant-appellee.

Patrick E. Gibbons, New York City (Galli & Locker and Oscar A. Thompson, New York City, on the brief), for third-party defendant-appellant-appellee.

Before CLARK, Chief Judge, and L. HAND and SWAN, Circuit Judges.

CLARK, Chief Judge.

These are appeals from district court judgments awarding plaintiff $100,000 damages on the verdict of a jury against his employer, the Long Island Railroad Company, and awarding the Railroad $50,000 as contribution but not indemnity against the Central Islip Cooperative G. L. F. Service, Inc., impleaded as a third-party defendant by the Railroad. Islip owned the siding on which the plaintiff was working when he was injured. Plaintiff, a brakeman, was standing in a narrow space between Islip's warehouse and the Railroad's box car when he was struck and injured by falling snow and ice. The Railroad is appealing the judgment against it, as well as the judgment in its favor insofar as the latter does not require full indemnity over to it, while the third-party defendant appeals the judgment against it.

Upon the trial the jury could have found the following facts: The warehouse was standing in its present position when the Railroad laid a siding track next to it, so located that the roof of a box car spotted opposite the western door of the warehouse was on the same level as the roof of the warehouse and less than eighteen inches from the warehouse eaves. On the day of the accident, January 18, 1954, a box car had been standing in that position for four days, with snow accumulated on its roof and the roof of the warehouse from the heavy snowfall which had occurred almost every day of the previous week. On that morning at the request of Islip's mill foreman the Railroad sent a crew consisting of plaintiff, two other brakemen, and a conductor to remove the empty box car. The conductor did not supervise the operation, however, but instead went to check on another train that was late.

The three brakemen backed a train along the siding, coupled it to the empty box car, and were about to move the train forward when the accident happened. During this operation plaintiff stood on icy footing between the box car and the building under the bridge of snow and ice so that he could observe the coupling. When the coupling was accomplished he faced the locomotive and signaled to move ahead. Another brakeman was standing facing him sixty feet down the track, to relay plaintiff's signal to the locomotive; but this brakeman failed to warn plaintiff of the bridge of snow overhead. Nor had plaintiff been warned by Islip's mill foreman, who gave plaintiff his instructions and who had noticed the snow bridge two days before. Plaintiff, his attention focused on the slippery footing below, gave the signal and was instantly hit by falling ice and snow. For the resulting injuries the jury has awarded him $100,000 damages against the Railroad.

The Judgment Against the Railroad

We think there was evidence to sustain the several alleged acts of negligence which the trial judge submitted to the jury. One of these—as to the location of the tracks—is the subject of particular objection on this appeal and

must be separately considered. The judge charged:

" * * * But I will charge you, in accordance with the request, that in considering the question of negligence, the original construction of the railroad siding at the point where the accident happened and erected it in too close proximity of the existing building and that such negligence contributed to the happening of the accident and that the negligence of the third-party defendant at a later date concurred in producing the injury, then there is concurrent negligence."

The Railroad's position is that even if the location of the tracks too near the warehouse may have created an unreasonable risk that plaintiff would be struck by a moving train, yet the present injury was not the product of that risk, but was caused by falling snow. It is true that liability for negligence must be predicated upon an injury from that very peril occasioned by the defendant's breach of duty. See Restatement of the Law of Torts § 281, comment *e* (1934). But the jury could have found that by so locating its tracks the Railroad also created an unreasonable risk of injury caused by the fall of ice and snow which "bridged" between the warehouse eaves and railroad cars spotted for loading or unloading at the western door. Whether a reasonable man would have foreseen such a peril seems very similar to the question whether a reasonable man constructing a roof would foresee the likelihood that it would cause snow to fall on passers-by below. E.g., Shipley v. Fifty Associates, 1896, 101 Mass. 251; Klepper v. Seymour House Corp., 1927, 246 N.Y. 85, 158 N.E. 29, 62 A.L.R. 955; Pease v. Shapiro, 1949, 144 Me. 195, 67 A.2d 17; Landreville v. Gouin, 6 Ont.Rep. 455 (1884); cases collected in Annotation, 62 A.L.R. 964.

It is apparent, therefore, that the evidence was adequate to show negligence at common law. In any event it satisfies the liberal standards properly applied in the interpretation of the Federal Employers' Liability Act in the light of the Supreme Court's frequent admonitions that appellate judges are not there to substitute their ideas of negligence for those of the jury. E.g., Lavender v. Kurn, 1946, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916; Cahill v. New York, N. H. & Hartford R. R. Co., 2 Cir., 224 F.2d 637, reversed 350 U.S. 898, 76 S.Ct. 180, *opinion recalled and case remanded to this court* 351 U.S. 183, 76 S.Ct. 758, *judgment for plaintiff affirmed per curiam,* 2 Cir., 236 F.2d 410; and cases cited 224 F.2d 637, at page 640.

The Railroad claims that there was inadequate proof that it had n..ice of the bridged snow, and that without such notice there was no duty to warn. But the bridge was in clear view, and a fellow employee was facing it before and during the time it fell on the plaintiff.

### The Judgment Against Islip

■ In attacking the limited judgment it was awarded against Islip, the Railroad relies not only on its legal contention that the primary negligence was Islip's but also on the ground that it was entitled to full indemnity under the terms of its siding agreement with Islip. The pertinent part of that agreement is as follows:

"The Industry [Islip] also agrees to indemnify and hold harmless the Railroad Company for loss, damage, or injury from any act or omission of the Industry, its employees or agents, or any one not a party to this agreement using said side track and switch connection, their employees or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said side track and switch connection; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, or the joint or concurring negligence of any one not a party to this agreement using said side track and switch connection

and the Railroad Company, it shall be borne equally by the Industry and the Railroad Company."

The Railroad objects to the action of the judge in submitting the issue of a possible concurrent negligence to the jury. But it was not error to instruct the jury that there was concurrent negligence if the Railroad's negligence in laying the track concurred with Islip's later acts of negligence in producing the injury. The Railroad argues that its manner of laying the track, even if it constituted "negligence" under the F.E.L.A., could not constitute "negligence" within the meaning of the contract. But the parties to the contract are held to have known of the existence of the federal statute at the time they executed their agreement, and we would surely have to torture its clear words to find they intended in cases such as this that the Railroad's "negligence" to its employee was to be determined under the federal statute for one judgment and under the common law for the other.

It is also suggested that the instruction quoted above may have misled the jury into believing that at law the Railroad was only entitled to 50% idemnity if it mislaid the tracks and Islip was guilty of later acts of negligence which concurred in bringing about the result. The Railroad contends that legally its construction of the track was not negligence and could not reduce its right of indemnification from 100% to 50%. But the contract limitation governs once the jury has found the existence of negligence as defined above. The trial court's instruction was thus in accord with the proper construction of the siding agreement.

The Railroad also contends that in no event could the jury have found that its negligence was on the same level of culpability as Islip's, and consequently it was entitled to full indemnity, citing cases where full indemnity was awarded to other carriers under similar agreements. E.g., Deep Vein Coal Co. v. Chicago & E. I. R. Co., 7 Cir., 1934, 71 F.2d 963; Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902, 20 A.L.R.2d 695; Atlantic Coast Line R. Co. v. Robertson, 4 Cir., 1954, 214 F.2d 746; Baltimore & Ohio R. Co. v. Alpha Portland Cement Co., 3 Cir., 1955, 218 F.2d 207. In those cases the injury was produced by the primary negligence of the siding owner, and the carrier's only fault lay in the fact that it had a nondelegable duty to provide a safe place to work for its employees. Here the jury could have found that there was equal culpability—the Railroad having built tracks in an unsafe place and Islip, once aware of the peril, having failed to warn plaintiff of it.

Islip's appeal from the judgment of contribution must fail since there was ample evidence from which the jury could have found that Islip's mill foreman, although aware of the bridge of snow two days before the accident, called for plaintiff's services, instructed him as to the job, and failed to warn him of the bridge of snow. In addition there was evidence that Islip maintained the roof of its warehouse without snow guards, and without other protection for persons below, although it was sharply pitched, gutterless, and made of smooth sheet metal.

Affirmed.

L. HAND, Circuit Judge (concurring).

I agree that the railroad was negligent in coupling the moving car and locomotive to the standing car while the plaintiff stood under the ice bridge. Moreover, if the plaintiff had been caught between the standing car and the platform a verdict might also have stood because of the closeness of the tracks; but I cannot think that the fall of the ice was a result, the responsibility for which can be made to rest upon that circumstance. In short, I think that that part of the charge was wrong; but the railroad's liability seems to me so plain on the facts, that I think we may and should disregard the error.

As for "Islip," it broke its contract to keep the tracks clear, and for that reason it should contribute.