Charles QUALEY

v.

Stuart Edward FULTON

Supreme Judicial Court of Maine.

Argued Sept. 16, 1980.

Decided Nov. 20, 1980.

Jordan & Goodridge, Donald H. Goodridge (orally), Houlton, for plaintiff.

Barnes & Sylvester, Torrey A. Sylvester (orally), John O. Rogers, Houlton, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ.

CARTER, Justice.

The plaintiff in this case appeals from an entry of judgment in favor of the defendant after a jury–waived trial, which judgment was based upon the trial court's rejection for lack of credibility of the plaintiff's uncontradicted testimony.

We affirm the judgment entered below.

Plaintiff sought recovery of the value of a tractor–trailer motor vehicle which he alleged to be covered against theft by an insurance policy issued by the defendant.[1] The defendant admitted issuing an insurance policy extending coverage to a described tractor and trailer.[2] Defendant contended below that the plaintiff had never purchased or owned the described units and that they had never been stolen from the plaintiff's possession.[3]

The plaintiff's proof at trial consisted of his own testimony and the testimony of one other witness. The plaintiff's trial testimony related to the circumstances surrounding the alleged purchase, use, and theft of the tractor–trailer. The plaintiff's testimony in his pretrial deposition, offered by the defendant, also covered these points. At trial, the plaintiff's only other witness testified that, in June of 1976, at the plaintiff's request, he had painted a vehicle, which he described as a 1973 Transstar (International) truck. The witness did not know who owned the truck or what serial numbers it bore.

The defendant's evidence did not directly contradict any of the testimony adduced during the plaintiff's case–in–chief. The defendant's only witness was a professional adjuster for the defendant–carrier who investigated the circumstances of the plaintiff's claim under the insurance policy. He testified that he interviewed the plaintiff the day following the alleged theft and obtained a written, four–page, signed statement reflecting the plaintiff's description of

1. The complaint commencing the action identified the defendant as "Underwriters at Lloyds, London." The docket sheet reflects the entry on January 10, 1977 "Stipulations Substituting Representative Underwriters filed." Such a stipulation does appear in the original file of the court below. It recites that Stuart Edward Fulton is to be substituted as defendant in the place and stead of the then–named defendant, Underwriters at Lloyds, London, he "being one of the Underwriters at Lloyds, London subscribing to insurance described in Certificate LD 76 15 08 issued in the name of Charles Qualey." The stipulation further states that a final judgment in the action against defendant Fulton "shall be binding upon all of the underwriters subscribing to said insurance."

Neither the court's file nor the docket indicates that any action was taken by the court on the basis of the stipulation to formally substitute Mr. Fulton for the defendant originally named. However, all papers filed in the case after the stipulation name Fulton as the defendant. Neither party has subsequently raised any issue as to the sufficiency of the substitution either in the court below or in this court.

The provisions of M.R.Civ.P. 25, relating to substitution of parties, appear to require in all circumstances contemplated by the rule, save one, a motion and an order thereon of the court to accomplish the substitution of a party. The single exception is in the case of the death or separation from office of a public officer named as a party. In that circumstance the rule provides: "An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution." M.R.Civ.P. 25(d)(1). Neither does the substitution of a defendant appear to be properly accomplished under M.R.Civ.P. 21, relating to joinder of parties, in the absence of an order of court. *Cushing v. Cohen,* Me., 420 A.2d 919 (1980).

In this case the record reflects that both the parties in the court below have treated the *substitution as if it were accomplished* by the filing of the stipulation. Since we are satisfied that the absence of an order directing the substitution does not impinge on the enforceability of the court's judgment, and since no question is raised by the parties in this action as to the validity of the substitution, we do not decide whether the substitution was properly accomplished.

2. The insured vehicle was described in the policy as a "1973 International Tractor" and a "1971 Fruehauf trailer." The policy also identified each unit by reference to a serial number.

3. In his responsive pleading, the defendant raised as an Affirmative Defense that "plaintiff had no insurable interest in said tractor on the date of its alleged theft." The pretrial memoranda of the parties do not reflect that this issue was properly preserved for trial. M.R.Civ.P. 16(c)(4). There is no indication in the record that this defense was ever raised with respect to the trailer portion of the vehicle. The evidence of the plaintiff, if believed, would indicate that both units were purchased in the same transaction and at the same time. The defendant adduced evidence at trial that went to the issue of whether plaintiff had ever *bought* or *owned* the units described in the insurance policy. It does not appear that defendant's counsel ever argued at trial or in post–trial briefings that plaintiff had an interest in the vehicle in question which was not legally capable of being insured.

the purchase and theft of the vehicle. The statement, offered in evidence by the plaintiff, generally agrees with the plaintiff's testimony in his pretrial deposition. The gravamen of the adjuster's testimony was that, as a result of his investigation, he came to the conclusion

> that there was no such tractor or trailer ... [b]ecause I could not come up with anyone who had actually seen it. There was no documentation, no bill of sale.

The defendant offered the transcript of plaintiff's pretrial deposition, which was admitted, and produced no other evidence.

The trial court made the following findings of fact:

(1) "[T]hat the plaintiff ... never purchased or acquired or ever owned or ever had any insurable interest *or any interest at all* in the tractor–trailer unit described in said insurance policy." (emphasis added).[4]

(2) That the plaintiff "did not own or have any interest, claim or right, whatsoever, in any tractor–trailer unit."

(3) That no tractor–trailer unit in which the plaintiff had any interest "was ever stolen from the Plaintiff ... on September 2, 1976, or September 3, 1976 or at any other time in 1976." The court below ordered that judgment be entered for the defendant and that the action be dismissed on the merits.

The *court's decision clearly resulted from* its disbelief and ultimate rejection of the plaintiff's testimony, even though that testimony was not contradicted by any other witness on any significant point. In making findings of fact, the court below went beyond concluding that entry of judgment for the defendant was required by the plaintiff's failure to carry his burden of proof. It is, however, unnecessary for us to reach the question of whether those findings survive the application of the "clearly erroneous" test under M.R.Civ.P. 52(a). Upon a proper rejection of the plaintiff's

testimony, there was no other evidence in the record sufficient to carry the plaintiff's burden of proving his purchase of the vehicle in question, or its theft. Therefore, if the trial court acted properly in rejecting the plaintiff's uncontradicted testimony, the defendant was entitled to judgment. The validity of the trial court's findings of fact thereupon becomes moot.

■ The question we resolve, therefore, is whether the trial court erred in rejecting the plaintiff's testimony for lack of credibility. In a jury–waived trial, it is the trial court's responsibility to find the facts. M.R.Civ.P. 52(a). Central to the trial court's fact–finding task is the determination of the credibility of the witnesses. It must then consider the weight and significance to be given to the testimony and other evidence, and determine the facts to be gleaned from the entire circumstances of the case.

■ Where the trial court considers evidence for purposes of finding facts in place of a jury, he is not required to believe a witness, however incredible he may find his testimony, simply because there is no contradictory testimony or evidence in the record.

> The fact that the testimony of a party to a suit is not directly contradicted does not necessarily make it conclusive and binding upon the court. Of course it is not to be utterly disregarded and arbitrarily ignored without reason. It should be carefully considered and weighed with all of the other evidence in the case, and with all of the inferences to be properly drawn from facts established by the evidence; but if, on the whole case, it appears that such testimony is untrue, the court is not required to put the stamp of verity upon it, merely because it is not directly contradicted by other testimony.

*Mitchell v. Mitchell*, 136 Me. 406, 418, 11 A.2d 898, 904 (1940). *Accord, Pease v. Sha-*

---

4. We treat this as a finding that plaintiff never purchased "any interest at all" in the vehicle in question. We construe the trial justice's additional reference to "insurable interest" as inadvertent and having no legal significance in view of the defendant's abandonment at trial of his affirmative defense of lack of insurable interest. See note 3 *supra*.

*piro*, 144 Me. 195, 200, 67 A.2d 17, 20 (1949). Where the testimony of a witness is without direct contradiction, the fact–finder must rely on his impression of the credibility of the witness as a person and the internal evidence of truthfulness contained in the witness's testimony.

■ The trial court has the opportunity to see and hear the witness whereas an appellate tribunal is restricted to a consideration of the cold, written record of the testimony.[5] The primacy of the trial court's informational opportunity is to be respected.

[W]e must assume that these evanescent factors may have been persuasive, unless what does come before us rationally forbids the conclusions, no matter what the unknown factors were.

*E. F. Drew & Co. v. Reinhard*, 170 F.2d 679, 684 (2d Cir. 1948).

In addition, the fact–finder has available the indications of truthfulness inherent in the substance of the witness's testimony. Is the witness's version of events believable in the light of general knowledge and common experience? Are the circumstances he relates extraordinary or suspicious? Are they contradicted by inferences from circumstantial evidence? Is the witness consistent in his testimony? Are any significant variances or inconsistencies reasonably explainable in a manner consistent with the truthfulness of the testimony?

■ When we test the trial court's resolution of the issue of the credibility of the witnesses and of their testimony, we are not in a position to be able to accurately determine the weight the trial court assigned to each of the two sets of factors on which its credibility determination is based. The trial court's weighting of the "evanescent factors" perceptible in the course of oral testimony, and its assessment of the content of the witnesses' testimony, for purposes of a *credibility determination*, are not nicely compartmentalized, rational exercises but, rather, concurrent elements of a single intellectual equation. There is, here, a synergistic effect arising from a concurrently operating series of considerations which we, as an appellate court, have no factual or perceptual basis to evaluate. Subtleties of meaning are often tied to manner of expression, modes of speech, and turns of phrase, knowledge of which is readily available to the trial court but is denied to the appellate tribunal. Those subtleties of meaning may very well and properly have a significant effect upon the trial court's ultimate decision to believe or disbelieve the witness either generally or on a particular point. Hence, we must accept the trial court's evaluation of both elements of the equation, save where the physical evidence and the written record rationally forbid his conclusion on the credibility issue, "no matter what the unknown factors were." *Id.*

■ We have carefully reviewed the plaintiff's proof at trial. The trial justice could properly be concerned about the facial incredibility of the circumstances the plaintiff described relative to the alleged purchase of the vehicle or its supposed theft. He could properly find that significant variances existed within the plaintiff's testimony given at trial. He could properly find that substantial discrepancies existed between that testimony and the plaintiff's testimony in the pretrial deposition. He could properly conclude that these variances and discrepancies could not be rationally reconciled with truthfulness. Therefore, the written record and the physical evidence do not rationally forbid the trial court's disbelief of the plaintiff's testimony, regardless of what "the unknown factors were."

The presiding justice did not err in rejecting the plaintiff's testimony.

The entry must be:

Judgment affirmed.

All concurring.

---

**5.** This is neither a novel nor recent insight: Often there are things passing before the eye of a trial judge that are not capable of being preserved in the record. A witness may appear badly upon the stand and well in the record.
*Young v. Witham*, 75 Me. 536, 537 (1884).