The LUCE COMPANY [1]

v.

Herbert G. HOEFLER et al.

Supreme Judicial Court of Maine.

Argued June 17, 1983.

Decided Aug. 22, 1983.

---

1. The Luce Company is a family partnership and as such may lack the capacity to sue in Maine. *See* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 4.4, at 65 (2d ed. 1970). However, the defense of lack of capacity, which defendants here have not asserted, is waivable. M.R.Civ.P. 9(a); *Gulick v. Board of Environmental Protection,* 452 A.2d 1202, 1203 n. 1 (Me.1982). In *Gulick,* we deleted from the caption of the case the name of an unincorporated association that lacked capacity to sue and substituted in the caption the name of another plaintiff who suffered no such disability. We cannot perform a similar substitution in this case because The Luce Company appeared below as the sole named plaintiff.

Luce & Beach, P.A. by Christopher Beach (orally), Farmington, for plaintiff.

Mark S. Kierstead (orally), Waterville, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

McKUSICK, Chief Justice.

■ Herbert and Elizabeth Hoefler, makers of the two promissory notes[2] here sued upon, appeal from a judgment of the Superior Court (Franklin County) awarding plaintiff The Luce Company ("the Luces") a total of $72,971.47 plus post-judgment interest and costs. On the record of this case, we cannot overturn the Superior Court's decision.

At trial, the Hoeflers' only defense to the Luces' suit upon the notes was based on a subordination agreement entered into in December, 1979, by the Luces, Maine National Bank, the Small Business Administration, and Oliver Oil Company, a Maine corporation whose only shareholders are Herbert and Elizabeth Hoefler. That agreement included the Luces' promise not to "sue or collect or receive payment of" any and all of Oliver Oil Company's debts to it until Oliver Oil Company had finished paying off certain debts to the bank and the Small Business Administration. Those

2. One note was signed by Herbert Hoefler alone; the second was signed by both Herbert and Elizabeth.

latter debts were still partially outstanding at the time of trial. The Hoeflers introduced evidence in the Superior Court in an attempt to show that the December, 1979, subordination agreement had been intended to protect them individually from suit, as well as their corporation. The trial justice, however, sitting without a jury, found that the Hoeflers

> had not met their burden of convincing the Court that the agreement, to which [the Hoeflers] were not parties, prohibited [the Luces] from pursuing any debt to it other than a debt from the Oliver Oil Company.

In order to prevail on their affirmative defense, defendants had to prove by a fair preponderance of the evidence that the subordination agreement extended beyond the terms of the written document to protect the Hoeflers also from suit by the Luces. The trial justice's ultimate decision need not have been based on a finding that the parties to the agreement intended that it should *not* bar the instant suit against the Hoeflers. The party who bears the burden of proving the factual basis for a claim or affirmative defense will suffer an adverse judgment if the factfinder is merely not persuaded by that party's evidence. *See Baker's Case,* 143 Me. 103, 108, 55 A.2d 780, 782–83 (1947).

The trial court in this case based its decision on a determination that the Hoeflers failed to establish the facts necessary to support their affirmative defense. Such a determination may be reversed on appeal only if the evidence in support of the defense was of such a nature that the factfinder was compelled to believe it and to draw therefrom the requested inference to the exclusion of any other.

The evidence adduced by the Hoeflers consisted first of an earlier subordination letter (dated November 1, 1979) in which the Luces had agreed to subordinate their $55,000 notes to "a seasonal line of credit 90% guaranteed by SBA in the amount of $45,000." That subordination expressly ran for the benefit of the Hoeflers as well as Oliver Oil Company; it, however, subordinated the Luce loan to a smaller debt than the open-ended amount covered by the December, 1979, subordination agreement and was limited in time to eleven months. An earlier willingness to refrain from suing the Hoeflers under limited circumstances does not inevitably translate into a mandated conclusion that the Luces accepted the subordination handicap under more burdensome conditions.

Other evidence adduced at trial consisted of conflicting oral testimony by persons involved in negotiating and drafting the December, 1979, subordination agreement. One of the Luce partners, himself a lawyer, testified that he was aware that Oliver Oil Company was a corporation and that he signed the December, 1979, subordination agreement on the understanding that by its plain terms it did not bar the Luces from suing the Hoeflers individually. He testified that the Luce partners had "believed, as we discussed [the proposed December, 1979, subordination agreement] that [the Hoeflers] might have assigned the liability under that debt to their corporation for the purpose of payment from the corporation income as it was received."

Even if oral testimony is uncontradicted, an appellate court must accept the trial court's evaluation of it, "save where the physical evidence and the written record rationally forbid his conclusion on the credibility issue, 'no matter what the unknown factors'." *Qualey v. Fulton,* 422 A.2d 773, 776 (Me.1980). As we said in an analogous case involving a motion for a directed verdict by the party bearing the burden of proof,

> There is no law that can compel a human mind to believe . . . oral testimony. It may be inherently improbable. It may be impossible. It may be exaggerated. The silent facts and circumstances may raise doubts. It may not "ring true." The appearance, manner, or interest of a witness makes a vast difference to the mind

of him who hears testimony and who must decide as to truth or value.

*Pease v. Shapiro,* 144 Me. 195, 199, 67 A.2d 17, 20 (1949). *See also Service Auto Supply Co. of Puerto Rico v. Harte & Co., Inc.,* 533 F.2d 23, 25 (1st Cir.1976) (directed verdict in favor of party with burden of proof is rare, and permitted only where that party "has established his case by testimony that the jury is not at liberty to disbelieve"); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2535 (1971 & Supp.1983).

■ In sum, we cannot say that the evidence before the factfinder mandated a conclusion that the December, 1979, subordination agreement, which did not mention the Hoeflers, nonetheless represented a mutual meeting of the minds that the Hoeflers individually, as well as the named corporate debtor, Oliver Oil Company, were to be protected from suit by the Luces.

The entry is:

Judgment affirmed.

NICHOLS, ROBERTS and WATHEN, JJ., concurring.

DUFRESNE, Active Retired Justice, with whom VIOLETTE, Justice, joins, dissenting.

It is undisputed that the two promissory notes which are the subject of this action were executed, the first on September 9, 1974, by the defendant, Herbert G. Hoefler, and the second on April 30, 1976, by both the defendant husband and his wife, Elizabeth S. Hoefler, and delivered to the Bank (The First National Bank of Farmington/Firstbank, N.A.—both being the same banking institution) for the repayment of loans. The Luce Company, a family partnership, interested in seeing that the Hoeflers continued the operation of an oil distribution business in the community of Phillips, Maine, had guaranteed payment on both notes. The Hoeflers had been operating the business under the trade name of Oliver Oil Company. Sometime prior to November 1, 1979, the business was incorporated under the firm name of Oliver Oil Company. Firstbank as payee of the Hoeflers' personal notes executed by them in the course of their operation of the Oliver Oil Company business was demanding payment or renegotiation of these notes at the current higher interest rate of fourteen (14%) percent. On November 1, 1979, The Luce Company paid off Firstbank and received an assignment of the notes. Negotiations had been going on between the Hoeflers, The Luce Company, the Maine National Bank and the Small Business Administration "to obtain a seasonal line of credit 90% guaranteed by SBA in the amount of $45,000." On November 1, 1979, after paying off Firstbank and in order to induce a successful conclusion of the ongoing negotiations, The Luce Company sent the following communication to the Maine National Bank:

November 1, 1979

Maine National Bank

Phillips, ME 04966

Gentlemen:

In an effort to help Oliver Oil Company and Herbert and Elizabeth Hoefler to obtain a seasonal line of credit 90% guaranteed by SBA in the amount of $45,000, we will agree to subordinate the principal amount of $55,000 due us and interest accrued at the rate of 12% annually for the 11 month term of the $45,000 loan of credit.

Upon repayment to Maine National Bank and SBA of the line of credit, we expect Mr. and Mrs. Hoefler to pay the annual interest of $6,600 accrued for the period of November 1, 1979 to October 31, 1980.

Your granting this seasonal line of credit to Oliver Oil Company is essential to the community of Phillips and the Luce family feels that this subordination shall allow you to help a company that has shown substantial improvement in profitability over the last 24 months.

WE AGREE TO THE SUBORDINATION ABOVE.

THE LUCE FAMILY (signatures of partners omitted).

The subordination agreement involved in these proceedings was then executed in December, 1979. The agreement referred to The Luce Company, a partnership, as the creditor and the Oliver Oil Company, a Maine corporation, as the borrower; the Hoeflers did not appear as parties to the agreement in their individual capacities, and the contract was executed in the name of the Oliver Oil Company over the signature of its president with attestation of the corporation clerk and the affixing of the corporate seal. This agreement recites that the borrower (the Oliver Oil Company, a Maine Corporation) is indebted to the Creditor (The Luce Company) at this time in the sum of $50,000.00, plus accrues and unpaid interest. As a matter of fact, it is undisputed that the $50,000.00 indebtedness was that of the Hoeflers individually to The Luce Company under the reference promissory notes. There is no evidence whatsoever in this record that the Oliver Oil Company, the corporation, had on its incorporation or thereafter assumed the debt of the Hoeflers to The Luce Company.

The Luce Company filed their complaint on April 14, 1981, to which the defendants answered by way of a general denial, except for their admission of the execution of the two promissory notes. They did, however, assert as an affirmative defense that the plaintiffs had executed a subordination agreement which by its terms and on its face would bar the plaintiffs' action at this time. The plaintiffs filed their pretrial memorandum on September 18, 1981 pursuant to Rule 16(a)(1), M.R.Civ.P. In this memorandum, the plaintiffs in the statement of the nature of the case, after reciting the factual background, allege that the "Defendants admit the existence of the two notes, but deny liability thereon. As affirmative defenses, defendants state that a certain subordination agreement dated December 1979 acts as a bar to this action, etc." Notwithstanding the clear statement in the plaintiffs' recital of the nature of the case that an issue in the action was, whether the subordination agreement barred the plaintiffs' suit in the light of the defend-

ants' admission of the execution of the notes, the plaintiffs incorrectly asserted in their listing of the issues in the case, (1) the execution and delivery of the notes, (2) whether there had been an accord and satisfaction between the parties and (3) whether substitute promissory notes were ever executed by the Oliver Oil Company and delivered to the plaintiffs. The first listed issue did not exist, since the defendants had admitted in their answer execution and delivery of the reference notes, and the other two stated issues were also nonexistent, since they had not been raised by affirmative defenses. But the plaintiffs' alleged statement of the issues in the case omitted to list the obvious and sole existing true issue between the parties suggested by the pleadings, to wit, the subordination agreement, which was pleaded as an affirmative defense and which the plaintiffs conceded was the defendants' defense against liability in their recitation of the nature of the case. This seems to have been an intentional omission rather than an accidental one. It smacks of gamesmanship rather than a sincere effort on the part of a party to narrow the issues in the case.

At hearing, the plaintiffs objected to the introduction of the subordination agreement on the ground that the defendants had waived that affirmative defense which they had asserted in their answer by not filing their own pretrial memorandum, additionally raising therein this very same issue. The defendants sought to excuse their failure to submit a pretrial memorandum: first, in the memorandum's statement of the nature of the case, the plaintiffs did explicitly refer to the defendants' affirmative defense of alleged avoidance of present liability on the declared promissory notes by virtue of a subordination agreement between the parties, and, secondly, by listing as issues in the case, whether the defendants were liable to the plaintiff partnership on the respective notes, in what amount of principal, interest and reasonable attorney's fees, the plaintiffs, it is contended, had implicitly raised as the point at issue the broad

question of the defendants' liability in the context of the subordination agreement. The court received the evidence relating to the subordination agreement over objection, reserving its ruling on the issue of the admissibility of such agreement in the light of the defendants' failure to attend the pretrial conference and specifically raise the issue formally on pretrial memorandum format.

Notwithstanding the stated excuses, the defendants' attorney was in violation of Rule 16(a)(1) by not filing a pretrial memorandum. The rule provides that

> [w]ithin 20 days after one party serves a pretrial memorandum, each other party *shall* file a responding pretrial memorandum.

Under the rule, sanctions were available to the court for noncompliance:

> Failure to file a responsive pretrial memorandum shall be grounds for default under Rule 55 or for involuntary dismissal for non-compliance with these Rules under Rule 41(b)(2), as appropriate or for imposition of any of the sanctions provided for under subdivision (d) of this Rule, where appropriate.
>
> (d) *Sanctions.* If a party fails to comply with the requirements of this rule or any order made hereunder, the court shall impose upon the party or his attorney, or both, such sanctions as the circumstances warrant, which may include the dismissal of the action or any part thereof with or without prejudice, the default of a party, the exclusion of evidence at the trial, and the imposition of costs including attorney's fees and travel. The court may expressly order, where appropriate in its discretion, that the costs of such sanctions be borne by counsel and that they shall not be passed on to counsel's client.

The court in its decision expressly ruled that it "*has to exclude* the evidence as to the subordination agreement from its consideration, the issue of the subordination agreement not included as an issue for trial in the pretrial order. That being the case, there being no evidence presented to dis-

pute the fact of the debt being owed, Plaintiff must have judgment ..." (Emphasis supplied). The court was in error in its ultimate conclusion that the instant pretrial order, previously entered of record by another justice of the Superior Court, deprived the defendants of their sole defense to the plaintiffs' action which they had properly raised affirmatively in their answer, that he was bound thereby and had to rule all evidence respecting the subordination agreement as inadmissible, and, therefore, had to disregard such evidence.

Pretrial Rule 16 says that "[u]nless specifically excused by the court, *on motion,* every party to an action shall file a pretrial memorandum." Here, no motion was made to compel the actual filing of a pretrial memorandum by the defendants. True, under the rule, the defendants were obligated automatically to file a responding pretrial memorandum within 20 days after the plaintiffs had served their pretrial memorandum, which the defendants did not do. Their failure to do so subjected them to sanctions, but not to the pretrial order that issued in this case under the justice's direction. Initially, let us repeat what we said in *Beckwith v. Rossi,* 157 Me. 532, 538, 175 A.2d 732, 736 (1961):

> Courts have often expressed the view that one of the chief purposes of pre-trial procedure is to formulate the issues to be litigated at the trial. Rule 16 provides that the order shall recite the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel.

Thus, the rule contemplates a conference at which the court and all parties to the action will participate. The format commonly used to report the results of the pretrial conference so provides in its introductory arrangement, and, in this case, did declare that, pursuant to M.R.Civ.P. 16, a pretrial conference was held in this cause on June

29, 1982, *with all parties represented by counsel* as follows. But, on its face, it then indicated explicitly that the attorney for the defendants did not appear. Hence, there was no conference as contemplated by the rule; indeed, in M.R.Civ.P. 16(c)(4), counsel representation of each party is made obligatory, unless counsel representation is excused by the court for good cause, which was not the case here.

"Unless excused for good cause, each party shall be represented at the pretrial conference by counsel who expects to conduct the trial and who shall be thoroughly familiar with this rule and the case. Excuse for good cause may be granted on written application which shall contain an express representation that substitute counsel appearing at pretrial conference will be thoroughly familiar with this rule and the case and will be fully authorized to act at pretrial conference in all respects.

Counsel shall also come to the conference with full authorization from their clients with respect to settlement."

The rule does provide that on the adoption of the moving party's memorandum in a responding pretrial memorandum, the pretrial memoranda shall have the effect of a pretrial order to the extent that the contents thereof do not conflict with the specific provisions of any pretrial order entered by the court (Rule 16(a)(4)), and, under 16(b), the court may dispense with a pretrial conference at the request of a party after the filing of pretrial memoranda accompanied by a proposed joint pretrial order, the pretrial conference to be ordered, however, if the court finds the proposed joint pretrial order unacceptable.

Assuming *arguendo* that the pretrial justice could under the rule issue the pretrial order that he did, to the effect in pertinent part as follows:

It is ordered that :

3. Issues and legal theories.
   As listed in pre-trial memo

13. Other action.

Plaintiff's Pre-Trial Memo shall control the trial of this action,

nevertheless, absent any specificity in the court's pretrial order respecting the issue or issues to be tried and in the light of the plaintiffs' statement of non-issues in their pretrial memorandum and the disclosure in their analysis of the nature of the case of the defendants' sole defense of the action as properly pleaded, to wit, the subordination agreement, the trial justice should have construed the standing pretrial order *liberally* as not precluding the admissibility of evidence respecting such affirmative defense. Where the court's action amounts to depriving a party of his day in court and is tantamount to the imposition of the sanction of a default, absent any evidence of bad faith on the part of counsel for the defendants, the trial justice should have given a liberal construction to the terms of the pretrial order and have entertained the evidence surrounding the subordination agreement. *See Beckwith v. Rossi,* 157 Me. at 540, 175 A.2d at 737.

True, Rule 16(c)(3) does provide that any objections to the contents of the pretrial order shall be filed with the clerk within 10 days of the date on which the Pretrial Order is mailed to counsel, (which was not done in this case), and that any pretrial order, when entered by the court, controls the subsequent course of action unless modified at the trial to prevent manifest injustice. Counsel's inaction respecting the pretrial order was not in violation of the rule in view of the plaintiffs' confusing pretrial memorandum that was adopted as the court's pretrial order. Where manifest injustice to the defendants was obvious under the circumstances of the case, it was an abuse of discretion for the court to disallow absolutely and without opportunity to permit amendment of the pretrial order the evidence of the subordination agreement.

The defendants' affirmative defense could not be treated as waived. A waiver could arise only if the defendants' counsel had appeared at the pretrial conference, had tendered the issues to be tried, and

would not have listed his affirmative defense of the subordination agreement as an issue in the case. It is *the representation and commitment* of the attorney for the party, here the defendants *as to their defense,* that is binding upon the party unless amended with court approval. It is only when at pretrial conference defenses are not tendered that they are treated as waived thereafter. *See Bickford v. Berry,* 160 Me. 9, 196 A.2d 752, 160 Me. 132, 199 A.2d 566, 567 (1964).

But, is this procedural error harmless, when the trial justice further stated in his decision, the following alternative finding?

Even if the evidence pertaining to the subordination agreement were not to be excluded from consideration, this Court would find that Defendants had not met their burden of convincing the Court that that agreement, *to which the Defendants were not parties,* prohibited Plaintiff from pursuing any debt to it other than a debt from Oliver Oil Company, and that the subordination agreement would be no bar to Plaintiff pursuing Count I of the action. (Emphasis provided).

In this, the trial justice erred as a matter of law.

The evidence adduced by the Hoeflers to establish their affirmative defense of the subordination agreement immunizing them currently from liability on their individual notes to the plaintiff partnership consisted, in addition to Mr. Hoefler's testimony, not only of the testimonial admission of two of the partners in the partnership, but was also supported by the documentary evidence of the partners' letter to the Maine National Bank dated November 1, 1979, that

we will agree to subordinate the principal amount of $55,000 due us and interest accrued at the rate of 12% annually.

as stated in that letter,

[i]n an effort to help Oliver Oil Company *and Herbert and Elizabeth Hoefler* to obtain a seasonal line of credit 90% guaranteed by SBA in the amount of $45,000,

the motive behind the Luce Family undertaking being as mentioned therein:

Your granting this seasonal line of credit to Oliver Oil Company is essential to the community of Phillips and the Luce family feels that this subordination shall allow you to help a company that has shown substantial improvement in profitability over the last 24 months.

The failure to include in the final draft of the subordination agreement the original intended restriction that the subordination agreement would be for the 11 month term of the $45,000 loan of credit in no way repudiated the Luce Family intention that, in signing the subordination agreement as finally drafted respecting the Hoefler notes to the partnership, their purpose was to benefit both the corporation and the Hoeflers individually. This case is distinguishable from *Qualey v. Fulton,* 422 A.2d 773 (Me.1980), where the trial court disbelieved and ultimately rejected the plaintiff's testimony, even though that testimony was not contradicted by any other witness on any significant point. Here, the defendants who had the burden of proof in establishing their affirmative defense of the subordination agreement not only had the testimony of Mr. Hoefler in support of their defense, but also had uncontradicted evidence of the plaintiffs' corroborative admissions in documentary as well as in testimonial form. Such evidence is not to be utterly disregarded and arbitrarily ignored without reason. Thus, there was other unimpeached evidence in the record from the plaintiffs themselves, besides Mr. Hoefler's testimony, sufficient to carry the defendants' burden of proving the subordination contract to have been for their benefit.

Furthermore, the court's express statement in his alternative finding and ruling that the defendants were not parties to the subordination agreement, absent any other specific reason for his decision, is indicative of the controlling influence which such stated factor had in his final conclusion. By not recognizing the defendants' rights as third party beneficiaries of the subordination agreement, the court committed reversible error as a matter of law. The enforceability of third party beneficiary contracts is of long standing in the State of

Maine. *Hinkley v. Fowler,* 15 Me. 285, 289 (1839); *Edward Motley v. Manufacturers' Insurance Co.,* 29 Me. 337, 340 (1849); *Verrill v. Weinstein,* 135 Me. 126, 128, 190 A. 634 (1937).

As stated in *Brewer v. Dyer,* 7 Cush. 337 (Mass.1851), quoted with approval in *Bohanan v. Pope,* 42 Me. 93, 96 (1856), the law respecting third party beneficiary contracts favors the third person beneficially interested in the contract to the extent of creating the duty under the contract, *establishing privity* with the contract, and implying the promise and obligation on which an action on the contract or a defense based on the contract is founded.

In the face of the plaintiffs' concession that the subordination agreement of the Luce Family was for the benefit of the Hoeflers in connection with their obligation to the partnership in their individual capacity, it was error as a matter of law to deprive the defendants of a valid defense on the ground that they were not parties to the subordination agreement. Should the decision below prevail in this case, manifest injustice would have been inflicted on the defendants, and a misuse of the pretrial procedures would have brought us to the days of special pleading, the evils of which the rules of civil procedure sought to abolish. See 1 Field, McKusick and Wroth, *Maine Civil Procedure,* § 16.5, p. 327.[1] I would reverse and remand for the entry of judgment for the defendants. The respective parties to pay their own costs.

1. I do recognize that, when the attorney for the defendants did not appear for the pretrial conference of June 29, 1982, the defendants should have been penalized by the imposition of the sanction of the entry of a default against them pursuant to M.R.Civ.P. Rule 16(d). The court's conduct in the instant case was completely silent respecting the imposition of any kind of sanction and did not give any notice to the defendants of the specific jeopardy with which they were later confronted at trial. True, as stated in *Reeves v. Travelers Insurance Compa-* *nies,* 421 A.2d 47 (Me.1980), the ultimate sanction of a default judgment should be imposed only for the most serious instances of noncompliance with pretrial procedures and should not take place except upon notice and hearing. If the default procedure had been used, then the good faith vel non of the defendants' attorney could have been determined in proper fashion and might have resulted in the imposition in this case of a lesser sanction than what did amount to the defendants' deprivation of their day in court.