STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, ss.                          Docket No. LINDC-CV-2022-00061

Jennifer McKinney,
                Plaintiff,       )
                                 )
        v.                       )
                                 )          **Judgment**
Donna Travers,                   )
                Defendant.       )

## Introduction

The matter before the Court is a dispute concerning certain real property located in Millinocket, Penobscot County, Maine. Both parties, Plaintiff Jennifer McKinney and Defendant Donna Travers, are *pro se* (self-represented).

Although the Law Court has "repeatedly held that *pro se* parties are subject to the same standards as represented parties," the Maine Rules of Civil Procedure (M.R. Civ. P.) must also "be construed to secure the just, speedy and inexpensive determination of every action." **Uotinen v. Hall**, 636 A.2d 991, 992 (Me. 1994) (citation omitted); M.R. Civ. P. 1. In this case, therefore, the Court has attempted to strike this balance by requiring adherence to the rules, but allowing for generous interpretation to ensure that justice may be done.

Ms. McKinney filed her amended complaint on November 10, 2022, in the District Court, Lincoln.[1] In the Court's pretrial scheduling order, dated December 6, 2022, the Court indicated that "[m]ore than 30 days [had] passed without Defendant(s) having answered" the complaint. On April 28, 2023, the parties attended a trial management conference, at which the case was assigned to the Superior Court, Penobscot County, based on the trial's estimated length. On September 6, 2023, the parties participated in a trial without a jury, before the Superior Court, in Bangor.

A civil trial is governed by the Maine Rules of Evidence (M.R. Evid.), which means that when a court determines the outcome of a case, it may only consider the evidence that is admitted at trial. *See* M.R. Evid. 101. Therefore, in this case the Court will consider only the testimony heard at trial and the evidence admitted at trial. *See* **Deutsche Bank Nat'l Tr. Co. v. Wilk**, 2013 ME 79, ¶ 14, 76 A.3d 363 ("[A] fact-finder may not consider facts not

---

[1] Plaintiff filed her original complaint on October 5, 2022, which failed to comply with M.R. Civ. P. 8(a). On October 18, 2022, the Court instructed Plaintiff to file an amended complaint within 30 days.

1

PJC BANGOR COURTS
DEC 12 '23 PM12:01

properly in evidence or made part of the record."). For Plaintiff, the Court heard testimony from Plaintiff, John Tibbetts, and Kimberly Drinkwater, and admitted two exhibits (Pl.'s Ex. 1, 2) into evidence. For Defendant, the Court heard testimony from Defendant and Kenneth Bouchard, and admitted five exhibits (Def.'s Ex. 2, 3, 4, 5, 7) into evidence.

In a trial without a jury, in addition to "mak[ing] rulings of law," "it is the trial court's responsibility to find the facts." MacCormick v. MacCormick, 478 A.2d 678, 682 (Me. 1984); Qualey v. Fulton, 422 A.2d 773, 775 (Me. 1980) (citing M.R. Civ. P. 52(a)). A trial court must determine "the credibility of the witnesses," as well as "consider the weight and significance to be given to the testimony and other evidence, and determine the facts to be gleaned from the entire circumstances of the case." Qualey, 422 A.2d at 775. Based on the testimony heard and evidence admitted at trial, the Court finds the following facts in this case:

The house and real property at issue are located at 55 Iron Bridge Road, in Millinocket. Plaintiff and her father-in-law, Paul McKinney, entered into an "Owner Financing Mortgage Contract" with John Tibbetts, the owner of that property, on March 25, 2016. Mr. Tibbetts was living out of state at the time, so the contract was signed on his behalf by his agent, Kimberly Drinkwater. Both Plaintiff and Mr. McKinney signed the contract, and it was notarized at the Millinocket Town Office.

At the time the contract was signed, Plaintiff paid Ms. Drinkwater $4,000.00 as a down payment. Ms. Drinkwater received this and all other payments under the contract and forwarded them to Mr. Tibbetts. The terms of the contract called for Plaintiff and Mr. McKinney to pay Mr. Tibbetts $400.00 per month, for a duration of three years, at which point the house would be paid off at a sales price of $18,000. If Plaintiff and Mr. McKinney were able to pay a total amount of $13,000 by the end of one year, on March 25, 2017, then the house would be paid off at a discounted price. There was an expectation that Mr. Tibbetts would provide a deed to Plaintiff and Mr. McKinney once he had been paid in full, but there was no provision to that effect in the contract. Although Defendant and Mr. McKinney were married in March 2016, Ms. Travers was not part of the transaction.

At some point, Ms. Drinkwater stopped receiving the monthly payments. She called Ms. McKinney who, as a result of having suffered a brain injury in July 2016, had deferred responsibility for the contract payments to Mr. McKinney. Plaintiff gave Mr. McKinney's contact information to Ms. Drinkwater, who sought the missing payments from him. When she did not receive any money for another month or so, Ms. Drinkwater called Mr. McKinney again and notified him that Mr. Tibbetts wanted to take the house back unless

2

Mr. McKinney could satisfy the entire obligation. Ms. Drinkwater estimated that at the time, Plaintiff and Mr. McKinney were behind on five or six monthly payments.

At a later date, Mr. McKinney called Mr. Tibbetts and stated that he had secured a personal loan and could pay off the house. They scheduled a closing for that purpose. Ms. Travers' bank records reflect that she and Mr. McKinney took out a joint "real estate loan" from Saco Valley Credit Union on March 24, 2017, in the amount of $15,800.00.[2]

Mr. Tibbetts arranged to fly to Maine from his home in Texas. On March 24, 2017, Mr. Tibbetts and Mr. McKinney went to the office of a title company in Lincoln, Maine, to complete the paperwork. After receiving payment, Mr. Tibbetts signed a deed that transferred the property to Defendant and Mr. McKinney. Mr. McKinney died on September 9, 2022, after an extended illness. Ms. Travers now wants to sell the property.

The Court has carefully reviewed the testimony, exhibits, and the relevant law, and the matter is now in order for decision.

## Discussion

In her complaint, Plaintiff asserts "an equitable claim" based on the "money [she has] invested in this property." (Pl.'s Compl. ¶ 2(d)). Plaintiff requests three potential remedies from the Court: (1) to uphold the contract, (2) to add her name to the deed, or (3) to order Defendant to repay Plaintiff's investment into the property from the proceeds of the property's sale. The Court considers each claim in turn.

For a court to order enforcement of a contract, "there must first be a contract to enforce." **McClare v. Rocha**, 2014 ME 4, ¶ 16, 86 A.3d 22. "A contract exists if the parties mutually assent to be bound by all its material terms, . . . and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." **Sullivan v. Porter**, 2004 ME 134, ¶ 13, 861 A.2d 625. In this case, the parties to the contract are Plaintiff, Mr. McKinney, and Mr. Tibbetts. Assuming the contract is legally enforceable, Defendant is not a party to it and it cannot be enforced against her. Therefore, without determining the contract's basic validity, the Court concludes it cannot provide the first form of relief Ms. McKinney seeks.

Next, Ms. McKinney asks the Court to edit the deed by adding her name to it. There is no legal authority for this request.

---

[2] The Court received no evidence as to the amount Mr. Tibbetts was paid on March 24, 2017.

As her final alternative, Ms. McKinney does request that as a matter of equity,[3] she be reimbursed for her financial contribution to the property. The equitable theory of "[u]njust enrichment[] . . . provides damages based on principles of equity, not contract," and allows a sucessful plaintiff to recover "when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." **Cummings v. Bean**, 2004 ME 93, ¶ 9, 853 A.2d 221; **A.F.A.B., Inc. v. Town of Old Orchard Beach**, 639 A.2d 103, 105 n.3 (Me. 1994). To succeed on a claim of unjust enrichment, a plaintiff "must prove (1) that it conferred a benefit on the other party; (2) that the other party had 'appreciation or knowledge of the benefit;' and (3) that the 'acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.'" **Howard & Bowie, P.A. v. Collins**, 2000 ME 148, ¶ 13, 759 A.2d 707 (quoting **June Roberts Agency, Inc. v. Venture Props.**, 676 A.2d 46, 49 (Me. 1996)).

The Court concludes, based on the evidence, that Defendant has been unjustly enriched by Plaintiff's payment of $4,000.00 as the down payment for the property at issue. Plaintiff is therefore entitled to recover the amount of $4,000.00 from Defendant.

## Conclusion and Judgment

JUDGMENT shall enter in Plaintiff's favor in the amount of $4,000.00.

The Clerk may incorporate this Judgment upon the docket by reference.

Dated: December 12, 2023

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 12/13/2023

The Hon. Bruce C. Mallonee
Justice, Maine Superior Court

---

[3] The term "equity" refers to "fairness," in contrast to a legal remedy which would be required by statute, rule, or case law. *See Equity, Black's Law Dictionary* (11th ed. 2019) ("1. Fairness; impartiality; evenhanded dealing . . . . 2. The body of principles constituting what is fair and right; natural law . . . ."). The Court has "full equity jurisdiction" in "all . . . cases where there is not a plain, adequate, and complete remedy at law." 14 M.R.S. § 6051(13).